## PINKHAM *v.* MATTOX.

It is not necessary that the absolute legal title to goods sold should pass to the buyer at the time of the contract of sale, in order that there may be an acceptance within the meaning of section 14, chapter 201, General Statutes; but if there is a contract for sale, although upon condition that the property shall not pass until the price is paid, and the buyer receives and accepts the goods upon the terms of such contract, his acceptance will be sufficient to answer the requirement of the statute.

A sold to B a sewing-machine for $80, to be paid for in monthly instalments of from $5 to $10, at the option of the buyer; and it was agreed that the machine should remain the property of A until paid for. The

machine was delivered and accepted at the time of the contract. B having paid nothing until $45 was due at the rate of $5 per month, in an action of assumpsit by A to recover this sum it was *held*, that the acceptance of the machine by B was a sufficient acceptance under the statute of frauds.

ASSUMPSIT, by Joseph Pinkham against George F. Mattox. Writ dated August 13, 1872. The declaration was, for that on the 28th day of August, 1871, in consideration that the plaintiff, at the special instance and request of the defendant, would sell and deliver to the defendant a certain sewing machine of the plaintiff's, of the value of $80, the defendant then and there promised the plaintiff to pay him therefor the sum of $80, in monthly instalments of from $5 to $10 per month, each and every month after the month of October then next, as might be most convenient for the defendant, and that said machine should remain the property of the plaintiff until the defendant should pay for the same ; and the plaintiff, confiding in the promise and undertaking of the defendant aforesaid, then and there delivered the said machine to the defendant, and he then and there accepted the same, and took the same away upon the terms aforesaid ; yet the said defendant has never paid said sum of $80 for said machine, nor any part thereof, but neglects and refuses so to do. Plea, the general issue. The case was tried by the court.

The plaintiff proved the facts alleged in the declaration. There was no note or memorandum of the contract in writing signed by the defendant, or by any person by him thereto authorized. The defendant moved for a nonsuit, on the ground that the case was within the statute of frauds. Subject to the defendant's exception, the court, *pro forma*, denied the motion, and found a verdict for the plaintiff for $45, and interest,—the damages being assessed at $5 per month, as the amount due for each month, from November, 1871, to July, 1872, both included.

*Charles H. Smith*, for the defendant, cited Gen. Stats., ch. 201, sec. 14; *Gilman* v. *Hill*, 36 N. H. 311; *Shepherd* v. *Pressey*, 32 N. H. 49; *Pilkin* v. *Noyes*, 48 N. H. 300; 2 Kent Com. *495; *Haven* v. *Emery*, 33 N. H. 66; *Lucy* v. *Bundy*, 9 N. H. 298; *Reed* v. *Upton*, 10 Pick. 522; 3 Phil. Ev. 367; Chitty on Con. *390; 2 Stark. Ev. 490; Story on Sales, secs. 276, 267; *Greenfield Bank* v. *Leavitt*, 17 Pick. 1; *Angier* v. *T. P. Mfg. Co.*, 1 Gray 261; *Gordon* v. *Norris*, 49 N. H. 376; *Rand* v. *The Railroad*, 40 N. H. 87; *McKean* v. *Turner*, 45 N. H. 205; *Bartlett* v. *Blanchard*, 13 Gray 430; *Gainsford* v. *Carroll*, 2 B. & C. 629; *Woodbury* v. *Jones*, 44 N. H. 209; 3 Par. on Con. 208; *Boorman* v. *Nash*, 9 B. & C. 145; *Thompson* v. *Alger*, 12 Met. 443.

*Small*, for the plaintiff, cited *Shepherd* v. *Pressey*, 32 N. H. 49; *Gault* v. *Brown*, 48 N. H. 183; *Acebal* v. *Levy*, 10 Bing. 376; *Marsh* v. *Hyde*, 3 Gray 331, 333; *Thompson* v. *Alger*, 12 Met. 437; *Davis* v. *Morse*, 13

Me. 427 ; Story on Sales, secs. 280, 279, note 2 ; 2 Par. on Con. 321, 324 ; *Williams* v. *Burgess*, 10 Ad. & El. 499.

LADD, J. The contract set up in the declaration and proved at the trial was a conditional sale of the sewing machine by the plaintiff to the defendant. That the defendant accepted and actually received the property there is no dispute. That it was accepted and received upon the terms of the verbal contract is also shown by the case. But, by that contract, the legal title was to remain in the plaintiff till the agreed price was paid, and so, of course, did not pass upon the delivery, and has never passed absolutely to the defendant. As we understand the defendant's position, it is upon this ground that he claims the contract comes within the operation of sec. 14, ch. 201, Gen. Stats., which provides that "No contract for the sale of goods, wares, or merchandise, for the price of thirty-three dollars, or more, is valid, unless the buyer accepts and actually receives part of the property sold, or gives something in part payment or in earnest to bind the bargain, or unless some note," &c. His claim, in a word, is, that, in order to answer the requirement of this section of the statute of frauds, the vendee must take the thing sold into his possession *as owner ;* that he cannot do this while the legal title remains in the vendor ; and, therefore, that his own acceptance and possession under this contract, not being in recognition and affirmance of a contract for an absolute and completed sale, does not amount to an acceptance within the meaning of the statute.

This was doubtless a contract for the sale of goods, which, in the absence of any memorandum in writing, could only be made valid in one of the two other ways pointed out by the statute, either by part payment, or by acceptance of part of the goods ; and it is not doubted now but that the statute applies as well to executory as to executed contracts of sale. Story on Sales, sec. 260, and cases in note.

If, then, we are to look upon this as an executory contract for the sale of the machine to the defendant, inasmuch as the property was not to pass absolutely to him until the price was paid, the question will be whether, in such a case, there can be a delivery and acceptance to answer the terms of the statute ; that is, whether, upon an executory contract of sale, there can be an acceptance to answer the statute at any time before the property passes absolutely from the vendor to the vendee.

If this is a correct statement of the question, an affirmative answer, upon authority at least, is found in several of the cases which will presently be referred to. But, as the question does not appear to have arisen in any case to which our attention has been called in this exact form, it may be more satisfactory to look a little further and discover, if we can, what is the sensible and correct application of the statute upon the state of facts presented here.

Although a considerable diversity of opinion has existed as to the practical operation and effect of the statute. of frauds—see remarks of Ld. CAMPBELL, C. J., and ERLE, J., in *Marvin* v. *Wallis*, 6 El. & Bl.

734, 736—it was doubtless intended for the prevention of frauds by furnishing a means whereby all doubts as to the completion of the bargain might be removed. This it does, in theory at least, by requiring some unequivocal act to show that the thing has ceased to be *in fieri*.

It is plain that the act required to give validity to the contract is no part of the contract itself. Even a memorandum in writing, with which we now have nothing to do, is no more than evidence that a contract was completed, and what the contract was, while the other two acts—part payment to bind the bargain, and the acceptance and actual receipt of part of the goods sold—have no natural or necessary connection with the contract, but are simply ceremonies designed to show, by some outward, visible sign, that the minds of the parties have met and the bargain is consummated.

It is true, these acts bear a certain similitude to the performance of the contract; they are like in kind; but no substantial part of the price need be paid, and no substantial part of the goods need be accepted; and there is no reason, in the nature of the thing, why any other convenient ceremony might not have been adopted for the same purpose and with the same effect. Drawing the edge of a shilling, by the vendee, across the hand of the vendor, to " strike off the bargain " —*Blenkinsop* v. *Clayton*, 7 Taunt. 597—is an act just as unequivocal, and just as appropriate and effectual, to all appearance, as the payment of a shilling; and the same might be said of any act or ceremony used by the Jew, the Roman, or the Indian, for a similar purpose. Story on Sales, sec. 273.

The act, of course, derives all its significance and force from the statute which requires it to be performed, and nothing short of a substantial performance of the act can be allowed to answer the requirement. Still, in construing and applying this statute, as in other cases, its general scope and object are to be had in view, so far, at least, as to make sure that nothing is added to or taken from it by construction which tends to defeat its obvious intent.

In our view, and the view most favorable to the defendant, the only contract between the parties here was an executory contract of sale. The stipulation, that the property should not pass absolutely till paid for, may properly enough be called a condition. Still, the undertaking of each was, in itself, absolute and unconditional. No right to draw back or rescind was reserved to either. The defendant accepted and received the property upon the terms of the contract, his part of the contract being an absolute and unconditional promise to pay for it the price agreed. So far as concerned his rights, all he had to do was to perform his engagement and so perfect the sale. The substance of the thing was a sale upon credit, the purchase-money being secured by the condition incorporated into the bargain, instead of a mortgage.

The right and interest of the plaintiff in the property, after the contract and delivery, was not at all what is understood as a vendor's lien for the price; that is a right which does not and cannot survive the delivery and acceptance of the thing sold. There was no contract

as to the use of the machine in the mean time.    It was not a loan ; it was not a letting for lien.    The defendant was permitted to take it solely on the faith of his promise to pay for it.    The delivery upon the terms of the contract was a sufficient consideration for the promise to pay.    The acceptance was in recognition and affirmance of the only contract the parties had made.    The act was unequivocal.    The plaintiff parted with substantial rights, namely, all the rights which attach to and follow the possession of a chattel by its owner.    In substance, at least, the transaction seems to come entirely within the reason and intent of the statute.    Does it not come within the letter of the statute also ?    It is now well understood that the clause under consideration applies as well to executory as to executed contracts of sale.    Brown on F., sec. 293.

It is also settled, as well probably as anything relating to the construction and application of this statute can be regarded as settled by the adjudged cases, that the acceptance need not be contemporaneous with the delivery and receipt of the property by the vendee.    *Cusack* v. *Robinson*, 1 B. & S. 299 ; *Marsh* v. *Hyde*, 3 Gray 331 ; Brown on F., sec. 337, and cases in notes ; and further, that, inasmuch as the statute does not fix or limit the time when the acceptance and actual receipt of the goods must take place, in order to make the contract valid and binding, an acceptance and receipt will be sufficient for that purpose, though made subsequent to the agreement of sale.    Story on Sales, sec. 280 *a*, citing *Bush* v. *Holmes*, 53 Me. 417 ; *Richardson* v. *Squires*, 37 Vt. 640 ; *Danforth* v. *Walker*, *ib.* 239.    And in the same section it is said the true inquiry is, whether the acceptance and receipt, whenever they take place, are in pursuance of the previous agreement.    If a verbal contract is proved, and an acceptance and receipt in pursuance of it are shown, the requisites of the statute are complied with.    See, also, the strong case of *McKnight* v. *Dunlop*, 5 N. Y. 537, where the receipt and acceptance took place several months after the verbal agreement ;—also, *Marsh* v. *Hyde*, *sup*.    Here there was an acceptance and actual receipt contemporaneous with the contract, but before the absolute legal title passed to the buyer according to the terms of the special bargain upon which the article was delivered ; and I am unable to see why the letter as well as the reason of the statute is not answered.

But it is said that, in order to constitute an acceptance within the statute, the buyer must take the possession, *as owner*, which implies that there can be no sufficient acceptance save where the legal title passes.    Doubtless the act of assuming dominion over the property, as owner, generally furnishes conclusive evidence of an acceptance.    The question of acceptance most commonly arises where there has been no actual tradition of the thing from the seller to the buyer, and where a constructive delivery, coupled with some act of the buyer denoting his purpose to treat it as his property, are relied on to show acceptance; or where either the thing was actually in the hands of the buyer at the time of the contract, or passed into his hands immediately after ; and a

question is raised whether he consented to hold it in pursuance of the contract of sale. Very delicate and troublesome questions may thus be raised; but it is plain they are questions of fact to be determined by the jury, and they seem to have been so treated in all the English cases where there was thought to be more than a *scintilla* of evidence tending to show an act of ownership from which acceptance could be inferred. *Elmore* v. *Stone*, 1 Taunt. 458; *Blenkinsop* v. *Clayton*, 7 Taunt. 597; *Chaplin* v. *Rogers*, 1 East 192; *Phillips* v. *Bristolli*, 2 B. & C. 511; *Parker* v. *Wallis*, 5 E. & B. 21; *Marvin* v. *Wallis*, 6 E. & B. 726; *Saunders* v. *Topp*, 4 Exch. 390; *Castle* v. *Eworder*, 6 H. & N. 828; *Morton* v. *Tibbett*, 15 Ad. & E. (N. S.) 428; *Cusack* v. *Robinson*, 1 B. & S. 299. In cases where the court have been of opinion that there was no evidence (no acts of ownership) from which the jury could legally find an acceptance, the question has been treated and determined as one of law. *Norman* v. *Phillips*, 14 M. & W. 277; *Howe* v. *Palmer*, 3 B. & Ald. 321; *Tempest* v. *Fitzgerald*, 3 B & Ald. 680; *Carter* v. *Toussaint*, 5 B. & Ald. 855; *Hanson* v. *Armitage*, 5 B. & Ald. 557; *Thompson* v. *Maceroni*, 3 B. & C. 1; *Holmes* v. *Hoskins*, 9 Exch. 753; *Hunt* v. *Hecht*, 8 Exch. 814; *Cooms* v. *B. & E. Railw. Co.*, 3 H. & N. 510; *Farina* v. *Home*, 16 M. & W. 119. In *Beaumont* v. *Brengeri*, 5 M. G. & S. 301, it was held, as matter of law, that certain acts of the buyer constituted an acceptance.

An examination of the American cases will doubtless show a similar result. 3 Par. Con. (5th ed.) 43; Story on Sales, sec. 276, *et seq.*; Brown on F., sec. 322, *et seq.* It is not impossible but that some of the subtle and nice distinctions raised and adopted in reference to the matter of acceptance, of which Chancellor Kent complained nearly half a century ago—2 Kent Com. 495—and some of the apparent if not real confusion and conflict in the English cases since that time, might have been avoided had the question of acceptance, which, in its essence, is purely a question of fact, been uniformly sent to the jury under suitable instructions as to the law. I am satisfied that the most careful examination of the great mass of cases, where the fact of acceptance has been determined one way or the other by the court, will not result in the discovery of any uniform rule; that such examination can be little more useful or satisfactory than the examination of a thousand verdicts relating to the same subject-matter, together with the evidence upon which they were found.

It does not help the legal view of the matter that courts have adopted certain rules which they have undertaken to apply in all cases, and so, by the aid of such rules, as well as their superior learning and experience, have succeeded in making their findings more uniform than would be the verdicts of ordinary juries. I think the rules adopted by courts to aid them in determining the matter of fact involved in the question of acceptance, as it has been presented in an infinite variety of forms, have produced, or, rather, themselves constitute the subtle distinctions of which Chancellor Kent speaks, and with which the whole subject is now, more than in his day, beset. Assuming all the judgments of the

courts on the subject to be correct, we can hardly wonder at the conclusion reached by ERLE, J., in *Marvin* v. *Wallis*, 6 El. & Bl. 734, that "the party who inserted the words in the statute had no idea what he meant by 'acceptance.'"

It is not necessary, however, to pursue this line of argument. It is sufficiently obvious, we think, that acts of ownership by the buyer are nothing more than evidence (generally very strong and conclusive) of acceptance. The conclusion by no means follows that an acceptance in fact cannot be shown in any other way.

Again: acceptance of part of the property sold is, by the statute, made sufficient. Can it be contended that acceptance of part is good as to the rest only when the property is so situated that the legal title to the whole passes upon acceptance of the part delivered? We think not. *Elliott* v. *Thomas*, 3 M. & W. 170; *Bigg* v. *Whisking*, 14 C. B. 195; *Gardner* v. *Grout*, 2 C. B. (N. S.) 340; *Hinde* v. *Whitehouse*, 7 East 558; *Richardson* v. *Squires*, 37 Vt. 640; *Davis* v. *Moore*, 13 Me. 424; *Atwood* v. *Lucas*, 53 Me. 508; *McKnight* v. *Dunlop*, 5 N. Y. 537;—and see *Scott* v. *Eastern Counties Railw. Co.*, 12 M. & W. 33, where it was held that an acceptance of part of the goods was sufficient though the rest were not in existence at the time of the contract.

This sufficiently shows that the passing of the legal title cannot be the universal legal test of a sufficient acceptance under the statute.

We have been speaking of this as simply an executory contract for the sale of the property. There would seem to be no difficulty in regarding it as an executed sale upon the single condition specified. The substance of the transaction was, as already suggested, that the defendant bought the machine, and at the same time entered into a stipulation with the plaintiff that the legal title should remain in him, for his security, until the price was paid. How can it be doubted that the defendant thereby acquired rights, with respect to the property, which a court of equity would be bound to enforce. The defendant, upon the completion of this verbal contract and the delivery of the property to him under and in pursuance of it, became the equitable owner of the machine, and the legal title was thereafter held by the plaintiff in trust for his benefit. The property was therefore accepted by the defendant, as equitable owner, and his act in receiving it, upon that title, to my mind, answers the requirement of the statute as fully as though he had received it as the absolute legal owner; certainly it affords evidence quite as emphatic and unmistakable of his assent to each and all the terms of the contract upon which it was delivered to him.

No case has been brought to our attention where the exact question raised here has been considered. *Dodsley* v. *Varley*, 12 Ad. & E. 632, seems, however, to be somewhat in point, and may be cited as an authority in support of the conclusion we have reached. There the defendant, having bargained with the plaintiff for the purchase of wool at a certain price, removed it to a warehouse used by the defendant for that purpose, but belonging to a third party; there the wool was weighed

and packed in sheeting of the defendant's. The course of dealing was, that wool remained on these premises till paid for. The wool in question was not removed or paid for; and it was held that there was a sufficient delivery and acceptance of the goods within 29 Car. 2, ch. 3, sec. 17, to ground an action for goods sold and delivered, though the plaintiff retained a special interest in them in respect of the understood engagement not to remove them till paid for. Ld. DENMAN, C. J., in delivering the judgment of the court, says,—"It was argued that, because, by the course of dealing the defendant was not to remove the wool to a distance before payment of the price, the property had not passed to him, or that the plaintiff retained such a lien on it as was inconsistent with the notion of an actual delivery. We think that, upon this evidence, the place to which the wools were removed must be considered as the *defendant's* warehouse, and that he was in actual possession of it there as soon as it was weighed and packed; that it was thenceforward at his risk, and, if burnt, must have been paid for by him. Consistently with this, however, the plaintiff had, not what is commonly called a lien, determinable on the loss of possession, but a special interest, sometimes but improperly called a lien, growing out of his original ownership, independent of the actual possession, and consistent with the property being in the defendant. This he retained in respect of the time agreed on, that the goods should not be removed to their ultimate place of destination before payment. But this lien is consistent, as we have stated, with the possession having passed to the buyer, so that there may have been a delivery and actual receipt by him. See, also, *McKnight* v. *Dunlop*, 5 N. Y. 537, and *Morton* v. *Tibbett*, 15 Ad. & E. (N. S.) 428.

But without reference to the cases, and without calling in question the authority of any case, we are satisfied, upon the reasons already stated, that the actual receipt and acceptance of the goods shown here, in accordance with the terms of the conditional contract of sale, were sufficient to answer the requirement of the statute, and that there must be　　　　　　　　　　　　　　　*Judgment on the verdict.*